GUILD v. PHILLIPS et al.

(Circuit Court, N. D. Georgia. October, 1888.)

1. JUDGMENT—BILL TO SET ASIDE—FRAUD.
    Where a bill in equity alleges that complainant's consent to a compromise decree in former litigation between same parties was obtained by a fraudulent withholding by defendants of important and material facts, well known to them, and unknown to complainants, which facts would probably have controlled the case in complainant's favor, the facts being here fully stated, and prays a decree setting aside the former decree, and demurrer is filed, held, demurrer will be overruled.

2. SAME—EVIDENCE OF FRAUD.
    G. conveyed land to his wife and children. Subsequently suit was brought against G. on a promissory note by his sister, Mrs. P. Judgment was obtained, and execution issued on the judgment levied on land conveyed to wife and children. They filed bill alleging collusion in obtaining judgment between G. and Mrs. P., and that there was no real indebtedness on note, which was the foundation of suit. G. and Mrs. P. filed sworn answers to bill, claiming bona fide indebtedness. There was compromise decree, making part of land subject to Mrs. P.'s execution. Subsequently, during his last sickness, and shortly before his death, G. informed Mrs. G. that "he and his sister had wronged her; that the papers they fixed up were a fraud." After his death she found in his papers a release from Mrs. P. to G. from all liability on the note. Other statements and circumstances are corroborative, and all taken together show collusion and fraud between Mrs. P. and G.

In Equity.

*Simmons & Corrigan,* for complainant.

*Broyles & Broyles* and *P. H. Bell,* for respondents.

NEWMAN, J. This case is a bill filed to set aside a compromise decree heretofore taken in this court. The case in which the decree now at- tacked was rendered grew out of this state of facts: Mrs. L. C. Guild was the wife of L. A. Guild. L. A. Guild purchased a tract of land in De Kalb county, Ga., taking a bond for title in his own name. When purchase money was paid, a deed to the land was made to Mrs. L. C. Guild. Subsequently it is stated that the property was conveyed by deed from Mrs. Guild to L. A. Guild. This conveyance is said to have been void under section 1785, Code Ga., no order of court having been taken approving the conveyance from wife to husband. Subsequently, however, an instrument was executed by Mrs. Guild, with the approval of the superior court, as required by the statute, by which she created in the land a life-estate for herself and her husband, L. A. Guild, with re- mainder to their children, five in number. It further appears that dif- ferences had arisen between husband and wife, and that in the year 1884 they were living apart. L. A. Guild had a sister, Mrs. E. L. Phillips, a resident of the state of Rhode Island. In 1884 Mrs. Phillips brought suit in this court, and obtained a judgment against her brother on a promissory note for $1,153.74. Execution issued on this judgment, which was levied on the tract of land named; the contention of the plaintiff as to her right to subject the land having been, as I understand it, that this land was originally bought by L. A. Guild, the husband, and paid for by him, and that subsequent conveyances or changes in title were void as against Mrs. Phillips, the same having been without consider- ation, and she being a creditor at the time of the original purchase. After the levy of the execution, Mrs. Guild filed her bill in this court for her- self and as next friend for her children, seeking to enjoin the sale of this land under said execution upon various grounds, among others, that there was no real indebtedness between L. A. Guild and his sister, and that the claim of indebtedness was mere pretense, for the purpose of sell- ing the land, and enabling said L. A. Guild, by sale of same collusively, through his sister, to get title and possession away from his wife and children. Bill was answered by Mrs. Phillips and L. A. Guild, their answer being sworn to, in both of which it was claimed that the debt was a *bona fide* existing debt, and that the amount claimed was justly due by said L. A. Guild to Mrs. Phillips. While the bill was pending, and before a hearing, a controversy arose between Guild and his wife as to the possession of two of the children. It had been agreed when they separated that the husband should keep two of the children and the wife three; it being further agreed that they both should keep the children in De Kalb county, so that the children kept by each could be seen by the other when desired. Mrs. Guild, in her belief that her husband in- tended to remove the two children in his charge to his sister's, Mrs. Phil- lips', in Rhode Island, took out a writ of *habeas corpus* for their posses-

sion. Before this writ was had, and while in the court-house with a view to a hearing, certain propositions of compromise were made, and negotiations ensued which resulted in giving the possession of the children to Mrs. Guild, and in a consent decree in the case in this court in relation to the land. The consent decree provided for a division of the land by commissioners, to be selected by agreement. One-half should be the property of Mrs. Guild, and one-half should be subject to the execution. This decree was carried into effect, and division was made in accordance therewith. The present bill proceeds to state that subsequently, something over two years thereafter, L. A. Guild became sick. During his sickness he was taken by Mrs. Guild to her home, and there nursed by her until he died. She says in her bill that before he died he said to her, in speaking of the sale of said land, that "he and his sister had wronged her; that the papers they fixed up were a fraud." After the death of L. A. Guild she says that in looking over his papers she found in his trunk an instrument written by L. A. Guild, and signed by his sister, a copy of which is as follows:

"GREENVILLE, R. I., July 19, 1884.

"Whereas my brother, Lewis A. Guild, did, on the 17th of August, A. D. 1875, make and give to me, in the city of Atlanta, state of Georgia, his promissory note for valuable consideration, for the sum of $1,153.74 dollars, now, for valuable consideration and the love I bear my said brother, and divers good causes, I do hereby give, release, and forever discharge the said Lewis A. Guild from all debt, liability, and injury in consequence of said note.

    [Signed]                       "E. L. PHILLIPS."

She says this writing was wholly unknown to her until she discovered it after her husband's death, during the present year, and shortly before the present bill was filed. She now asks that the compromise decree alluded to be set aside upon the ground of the concealment from her by her husband and Mrs. Phillips of the existence of this paper, and their false representations under oath of the existence of a *bona fide* indebtedness by the former to the latter, which she says is negatived by the discovery of this paper; and also upon the ground of coercion and undue influence in the effort to remove her children to the state of Rhode Island. To this bill a demurrer has been filed, the real grounds of demurrer insisted upon being, *first*, that, as to coercion and undue influence claimed to have been used to bring about the compromise decree, the bill is filed too late. There is much force in this objection, and, if the ground stood alone, it would probably control the case adversely to the complainant. She knew of any coercion brought to bear on her as well in November, 1885, when the settlement was made and decree taken, as she did in June, 1888, about two and a half years thereafter, when she filed this bill. It seems that a longer period had elapsed than should be allowed her to set up this ground of attack on the decree, especially after the death of L. A. Guild had intervened. As to the other ground of attack upon the decree, it is said by the defendant that the question of the *bona fides* of the indebtedness of L. A. Guild to Mrs. Phillips was made in the former litigation; that the bill then filed by Mrs. Guild asserted that there was

no real indebtedness, and that the answers denied this, and that the question was settled with the settlement and decision in that case. They also say that the mere withholding of facts in their knowledge by the defendants will not justify reopening the case; that they were not compelled to disclose the existence of this paper. I cannot agree with them in this position. The existence of this release or discharge was a prominent, material, and, if complainant's averments in this case be true, a controlling physical fact, known to them and unknown to complainant. Good faith required them to disclose it. Moreover, it was not a mere concealment of a fact, if the allegations in this bill are true, but it was a misstatement, willfully, knowingly, and falsely made, and that under oath. This release bears date July, 1884, and suit on the note was brought in August, 1884. A court of equity will not countenance such concealment and gross misrepresentation as is here shown, taking the allegations to be true, as I must on this demurrer. The demurrer must be overruled.

---

## ON FINAL HEARING.

### (October Term, 1890.)

There has been a final hearing in this case, and I have held it up for consideration until the present term. It must be taken as an established fact, notwithstanding Mrs. Phillips' denial, that she executed the release to Dr. Guild, alluded to and copied in the foregoing opinion. The fact of the execution of this release, and of its existence, was concealed by both Mrs. Phillips and Dr. Guild in their answers filed in the former suit in equity in this court. Not only was the existence of this release concealed, but the statement made by both under oath in their answers was that there was *bona fide* existing indebtedness on the note alluded to by Dr. Guild to Mrs. Phillips. It was, of course, an important and material issue in the former litigation whether or not there was real existing indebtedness from Dr. Guild to Mrs. Phillips, or whether, as contended there by Mrs. Guild, there was no real indebtedness, and the judgment the result of collusion between Mrs. Phillips and Dr. Guild. Now, as has been before stated, the existence of that release was an exceedingly important fact on that issue. This was withheld, and, in effect, the existence of any such instrument denied. This, of itself, might make a case for setting aside the former decree, which was taken by consent. But this is not the only evidence here which bears strongly against the good faith and proper conduct of the parties in the other case, and in this whole transaction. There are several statements and admissions by Dr. Guild in reference to the purpose of the suit and judgment on the promissory note offered in evidence. These statements and admissions are objected to on the ground that, even if a *prima facie* case of conspiracy is made out, such as to justify the admissions of Dr. Guild against Mrs. Phillips, his co-conspirator, yet defendant says that these admissions are not contemporaneous with the precise transaction, which is attacked here, nor a part of that transaction, so as to be admissible in

evidence under the law on that subject. It may be proper to add here that Mrs. Phillips' execution was levied on that part of the land set apart to Dr. Guild by the consent decree, and at the marshal's sale of the same in January, 1886, the land was bid off for Mrs. Phillips, and that shortly thereafter, under a power of attorney executed by Mrs. Phillips, Dr. Guild, as her attorney in fact, went into possession and control of the land. Several statements and admissions by Dr. Guild are offered, made after the execution of this power of attorney, and while he was in possession of the land in controversy. The objection to this testimony is twofold: *First*, the objection just alluded to, that it was after the conspiracy, if any existed, was consummated; *second*, that they go to disparage and prejudice the title of his principal, and in fact his landlord. I have not considered any of the evidence fairly subject to this objection, there being at least grave doubt of its admissibility. It may be proper to state further that in July, in 1884, Dr. Guild visited his sister in Rhode Island, and certain statements made by him before, and while on his way to make this visit, are offered in evidence. These statements are objected to upon the ground that they were made before Mrs. Phillips had in any way, so far as the evidence showed, indicated her willingness to become a party to the conspiracy. I have not considered these statements.

There is other evidence, however, in favor of complainant, which is admissible here. George K. Pettis testified for complainant in this case. His evidence is as follows:

"I reside in West End, Ga. I did reside on Dr. Guild's plantation in De Kalb county, Ga., in the year 1885. Nursery business. Dr. L. A. Guild was my partner. I formed the partnership the 1st of February, 1885, for a term of five years, for the purpose of carrying on a general nursery and fruit business. We had some trouble about the title. The United States marshal made a levy on the farm that I was living on, and I was somewhat vexed about it, and went to Dr. Guild and asked him what it meant, and stated to him that he told me before we traded that he owned the property, and that it seemed we were going to be put out, and Dr. Guild took me into his office and told me that I need not be alarmed; that the suit was only a form; that it was only an arrangement between he and his sister to get the land. He said that he had been east the summer before, and fixed it with his sister. He charged me specially not to say anything about what he said to me. He stated that he had arranged with his sister to bring the suit in the United States court against him in order to get the property. I asked him if that was not a prison offense, and he replied that no one would ever find it out. He mentioned the subject to me three or four times. He stated that as soon as he got possession of the property he would go on and do a big nursery business. The scheme was with Mrs. Phillips, and was as I have already stated."

These statements, made by Dr. Guild, as testified to by Pettis, it will be perceived, were made at the time the execution was levied on the land, and before the sale. These statements are contemporaneous with the transaction which is attacked. They were made to a person interested in the matter, and were explanatory of what the transaction really was. The levy of the execution and the sale of the land was certainly a part of the unlawful scheme, and without which the whole proceeding

would have been ineffectual. If a *prima facie* case of conspiracy had been established by proof of the execution of the release, and its concealment in the former proceeding, then this evidence seems clearly admissible. There is no attempt to discredit Pettis as a witness, and his testimony is therefore strongly corroborative of the other evidence in the case, which has been mentioned. In addition to this the power of attorney given by Mrs. Phillips to Dr. Guild is in evidence. It was given· after the land in controversy was conveyed to Mrs. Phillips by the United States marshal, and it not only authorized Dr. Guild to sell the land in question, but authorized him, in Mrs. Phillips' name—

"To offer for sale, bargain, sell, and convey, or lease, or rent, or borrow money and secure said money, and execute all mortgages or deeds of trust that may be necessary to or upon any tract or parts of land that I may now have, or that I may hereafter acquire to myself, in any town, city, or county in the state of Georgia." ·

She also authorized Dr. Guild, as her attorney, to fix the price of the land in his own discretion. It further appears from the testimony that, although Mrs. Phillips says in her evidence that she sued her brother on the note because she needed the money, that from the time of the sale of the land, in January, 1886, to the 10th of June, 1888, when Dr. Guild died, she made no effort to obtain any money from the sale of the land, but, on the contrary, she seems to have allowed Dr. Guild to use it, to sell part of it, and retain the proceeds, and this without any protest or complaint whatever from her, but apparently with her entire acquiescence. This whole transaction was remarkable, and looks wrong upon its face. It is unusual for a sister, fond of a brother, as Mrs. Phillips unquestionably was of Dr. Guild, to press him on a debt of this character, and as old as this was. It is hard to believe that this suit was brought with the intention on the part of Mrs. Phillips to force the payment of this old debt from her brother. Of course this view of the subject was as apparent in the former case as it is now, but when the facts and occurrences above alluded to, and which were not then known, some of which have since transpired, are added to the unusual and unreasonable appearance of the transaction, it makes unquestionably a very strong case, and one that manifestly requires the interposition of a court of equity. It would be wholly inequitable, in view of what is now established as to the withholding by defendant, willfully and knowingly, in the former suit, of facts material therein and important to complainant there and here, to allow that decree to stand. It cannot be believed that, if Mrs. Guild had been aware of the facts disclosed here, and not then known, she would have consented to that decree. The court is of the opinion, therefore, that complainants are entitled to a decree.

The court has not considered whether this decree should be granted on the terms or with the conditions incorporated therein, requested by counsel for defendant, but will hear suggestions on the subject, and argument, if necessary to a proper determination of it.