## GRAVER v. FAUROT.

### (Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

### No. 217.

FRAUDULENT DECREES—SUITS TO ANNUL.

Complainant brought a bill in equity in a state court charging the two defendants with deceitful and fraudulent practices, whereby plaintiff was induced to purchase from one of them certain worthless shares of stock at 60 cents on the dollar; that the other defendant, who was plaintiff's banker and confidential adviser, and who in fact advised him to make the purchase, was really a part owner of the stock, and received part of the profits of the fraud. Complainant, being unable to obtain evidence to prove his allegations, required the defendants to answer under oath, which they did; both denying the alleged fraud, and also denying that the banker had any interest in the stock. Upon these answers and the accompanying affidavits, a temporary injunction was dissolved. The statements of the answers having made complainant hopeless of proving his case, he gave no further attention to the suit; and, being thereafter in default for replication, the bill was dismissed for want of equity, by a decree reciting a hearing upon the evidence in the presence of counsel for both parties. But in fact complainant was not present, and no evidence was taken in addition to that contained in the bill and answers. Some time later, through the failure and insolvency of the banker, documents and evidence were brought to light showing the truth of complainant's charges; and he thereupon brought a bill in a federal court setting up the foregoing facts, alleging that solely by reason of the suppression of evidence by defendants, and their positive falsehood and perjury, the said bill was dismissed, and praying that the decree might be annulled, and one of the defendants enjoined from setting it up in a pending action. Held that, under the circumstances, the making of the false answers was a positive and actual fraud, which vitiated the decree, and that complainant was not prevented from availing himself of the fraud by his neglect to secure a voluntary dismissal of his suit in the state court, as would have been the better course, instead of permitting a final decree against him. U. S. v. Throckmorton, 98 U. S. 61, distinguished; Marshall v. Holmes, 12 Sup. Ct. 62, 141 U. S. 598, followed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

In September, 1888, the appellant, Graver, brought a bill in the superior court of Cook county, Ill., against the appellee, Faurot, and one Bailey, charging in substance that the defendants by deceitful and fraudulent practices had induced the complainant to purchase of Bailey 500 shares of stock in the Edwards Oil-Burner Company, at the price of 60 cents on the dollar, when the stock was in fact worthless; that Faurot, who was the president of the Lima National Bank, at Lima, Ohio, where the transaction in question occurred, and with whom the complainant was in confidential relations, having a deposit of $15,000 in his bank, was jointly and equally interested with Bailey in the stock, though professing at the time, and by the complainant believed, to be a disinterested adviser, upon whose assurance that the purchase would be a good one the complainant could, as in fact he did, rely. The prayer of the bill was that Faurot, to whom the promissory notes of the complainant, given for a part of the price of the stock, as it was alleged, had been indorsed, be enjoined against selling or disposing of unmatured notes; that the notes held by him be ordered surrendered and canceled; that the complainant be awarded other relief agreeable to equity; and that summons issue commanding the defendants to appear and to answer the bill. Verification of the answer was not waived. Upon the filing of this bill a temporary injunction against the transfer of the notes was issued. In October following, Faurot answered, under oath, denying all

complicity with Bailey, and all knowledge of fraud in the transaction, and alleging a good-faith purchase of the notes in the ordinary course of business. Bailey also answered, under oath, denying that Faurot was interested in the ownership and sale of the stock, and that deceit was practiced by himself to effect the sale. An affidavit was also made by each of the defendants in support of his answer; it being affirmed by Faurot, among other things, that he was solvent, and had property of the value of $500,000 or more. Upon the bill, answers, and affidavits mentioned, without other evidence, a motion to dissolve the temporary injunction was sustained, and thereupon no further step in the cause was taken until July 8, 1889, when the following entry was made: "This case coming on to be heard, came the parties hereto, by their solicitors respectively; and the court, having heard the evidence, arguments of counsel, and being fully advised in the premises, finds the equities of this case to be with the defendants. Therefore it is ordered that this case be, and the same is hereby, dismissed at the complainant's costs, for want of equity, and that the defendants have of the said plaintiff their costs in the premises." The statutes of Illinois (Rev. St. c. 22, §§ 28, 29) provide that a replication in chancery shall be filed within four days after service of notice upon the plaintiff or his attorney of answer filed, and that in default of replication the case may be heard upon bill and answer, in which case the answer shall be taken as proof, and no evidence shall be received unless it be matter of record referred to in the answer.

The present bill was brought in the same court January 11, 1894, by Graver against Faurot and Bailey, for the purpose of annulling the decree rendered in the first suit, and particularly for the purpose of enjoining Faurot against setting up that decree in a certain pending action as a final adjudication of the matters so determined. Bailey was not served with process, and did not appear to the suit. The bill, besides setting out the former bill, answers, and the decree, according to their tenor, reaffirms the allegations of that bill, and, after reiterating the charge that Faurot and Bailey were jointly interested in the stock purchased by the complainant, and participants in the fraud by which he was victimized, alleges as ground for annulling the decree that, though the complainant was certain when the first bill was filed that its allegations were true, the proof of the alleged conspiracy was wholly within the knowledge and under the control of the respondents; that the complainant was wholly ignorant that any witness or document could be obtained to establish the fraud charged, or to disprove the statements made in the respective answers and affidavits of the respondents, although, regardless of expense, he made every effort to obtain such evidence; "that it was solely by reason of the suppression of testimony on the part of said respondents, and by absolute falsehood and perjury on their part in the allegations contained in their respective answers and their respective affidavits, that said bill was dismissed for want of equity, and that the complainant was not able to obtain competent evidence to establish the allegations of his said bill"; that by reason of the premises, and of the fact that the dissolution of the injunction had been put by the court on the ground that there was a complete remedy at law, the complainant was informed by his solicitors, and believed, that it was not necessary for him to pay further attention to the case in court, unless able to obtain evidence tending to establish the bill, and sufficient to overthrow the sworn answers of the respondents. The discovery of the evidence necessary to establish the averments of fraud in the bill, and to show that the answers were false and perjured, it is shown, was made but a few days before this suit was brought, and resulted from a statement concerning the Lima National Bank and the conduct of its president contained in the annual report of the comptroller of the currency, dated December 5, 1892, in pursuance of which, it is alleged, the complainant was able to get at the books of the bank, by which, and by the officers of the bank, and by instruments in writing, he is now able to prove that Faurot and Bailey were the owners of the stock, and agreed to divide between themselves whatever profit they could make from the sale, and that of the proceeds of complainant's notes which were indorsed to the bank they did make such division.

The opinion of the court below is reported in 64 Fed. 241. After quoting from the opinions of the supreme court in U. S. v. Throckmorton, 98 U. S. 61, and Marshall v. Holmes, 141 U. S. 598, 12 Sup. Ct. 62, the opinion concludes as follows: "It will be observed that in the statement of general principles of law there is no conflict in the cases. The conflict, if any, is in the application of legal principles to the facts then in point. I have carefully examined the cases which the supreme court refer to in the latter opinion. Each of them was a case where the fraud was extrinsic or collateral to the matter tried, and undoubtedly fell within the doctrine of U. S. v. Throckmorton. As before stated, I am unable to distinguish those two cases upon the facts. The nature of the fraud was the same in both cases. In both the fraud was in the use of forged documents and false evidence offered by the successful party. In the one case the bill was dismissed, and in the other sustained. Both decisions were by a unanimous court. Three of the justices who were members of the court when the former case was decided were members of the court when the latter case was decided, including the justice who delivered the opinion of the court. I do not see how both can stand, and yet the former case is approvingly referred to in the latter. Possibly the fault is mine, that I am unable to distinguish them. In the doubtful frame of mind in which I am left by these two apparently conflicting decisions, I might have recourse to the maxim that the greater regard should be given to the later decision, were it not for the fact that in the latter case the former decision is approvingly referred to, and apparently sought to be followed. Under the circumstances, I think it would be a hardship upon the parties to put them to the expense of marshaling their evidence when the right to maintain the bill is thus placed in doubt. It would be the prudent course to first determine the right to maintain the bill on the facts stated, and in that view I have concluded, pro forma, to sustain the demurrer and dismiss the bill; and the complainant, by appeal to the court of appeals, may speedily have the question determined in advance of an issue upon the merits. That court may perhaps be able to reconcile the two cases referred to, or, if unable so to do, can certify the question to the supreme court for its solution." Recognizing the apparent conflict between the two opinions referred to, and deeming it important to obtain an authoritative solution of the doubt, this court at its January session, 1895, attempted to certify to the supreme court the question whether, the bill being assumed to be in other respects good, the alleged false swearing and perjury in the answers of the defendants in the first suit were available in this suit as ground for annulling the decree thereby obtained; but the supreme court, considering that to answer the question was practically "to pass upon the whole case," dismissed the certificate. Graver v. Faurot, 162 U. S. 435, 16 Sup. Ct. 799.

Robert Rae, for appellant.

F. L. Wean, for appellee.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

We are of opinion that upon the facts stated in his bill the appellant was entitled to relief. In Insurance Co. v. Hodgeson, 7 Cranch, 332, where the suit was to enjoin so much of a judgment at law as exceeded the value of the vessel insured, on the ground that overinsurance had been obtained by misrepresentation of the age and tonnage of the vessel, Chief Justice Marshall, defining the scope of equitable relief in such cases, said:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment,

and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. On the other hand, it may with equal safety be laid down as a general rule, that a defense cannot be set up in equity, which has been fully and fairly tried at law, although it may be the opinion of that court, that the defense ought to have been sustained at law. In the case under consideration the plaintiffs ask the aid of this court to relieve them from a judgment on account of a defense which, if good anywhere, was good at law, and which they were not prevented by the act of the defendants, or by any pure and unmixed accident, from making at law. It will not be said that a court of chancery cannot interpose in any such case. Being capable of imposing its own terms on the party to whom it grants relief, there may be cases in which its relief ought to be extended to a person who might have defended, but has omitted to defend himself at law. Such cases, however, do not frequently occur. The equity of the applicant must be free from doubt. The judgment must be one of which it would be against conscience for the person who has obtained it to avail himself. The court is of opinion that this is not such a case."

The general proposition there stated, that "any fact which clearly proves it to be against conscience to execute a judgment * * * will justify an application to a court of chancery," is quoted and reaffirmed in Marshall v. Holmes, 141 U. S. 589, 596, 12 Sup. Ct. 62. In Ward v. Town of Southfield, 102 N. Y. 287, 293, 6 N. E. 660, where it was alleged as the ground for setting aside a judgment at law that the judgment plaintiff was aware of and fraudulently concealed a fact which, if known, would have been a defense to the action, the court, after recognizing the rule declared in U. S. v. Throckmorton, 98 U. S. 61, that the fraud, to be available, must be extrinsic, "not in the subject of the litigation, not in anything which was involved in the issues tried, but fraud practiced upon a party or upon the court during the trial or in prosecuting the action, or in obtaining the judgment," said:

"It is not practicable nor possible to formulate a rule on this subject which will be sufficient to solve all cases, but, where fraudulent concealment of a fact is relied upon for the purpose of impeaching and setting aside a judgment regularly obtained, it must be an intentional concealment of a material and controlling fact, for the purpose of misleading and taking an undue advantage of the opposite party. It would not be wise or politic to carry the rule so far as to make it incumbent upon every plaintiff to reveal to the defendant any infirmity in his case, and to require every defendant to reveal to the plaintiff every infirmity in his defense. Where there is no relation of confidence between the plaintiff and the defendant, the parties stand at arm's length. They come into court as adversaries, and neither party is bound to make any revelation of his case to the other. The plaintiff must be prepared to prove all the facts constituting his cause of action, and to meet any defense which the defendant may interpose, and the defendant must be prepared to establish any defense which he may have. Neither party can mislead the other by any positive or actual fraud. Nor can he, for the purpose of perpetrating a fraud upon the other party, conceal such facts as good faith and common honesty require him to reveal. These principles are illustrated in many cases to be found in the books. Patch v. Ward, 3 Ch. App. 203; U. S. v. Throckmorton, 98 U. S. 61; Smith v. Nelson, 62 N. Y. 286, 288; Ross v. Wood, 70 N. Y. 8, 10; Hunt v. Hunt, 72 N. Y. 217, 227; Verplanck v. Van Buren, 76 N. Y. 247, 257."

The attack here is not upon a judgment at law, but upon a decree in equity; and manifestly it is not true of a complainant in equity that when he brings his bill he must come prepared with proof to

maintain it, and to meet any defense which may be interposed. It is his privilege to search the conscience of his adversary by requiring him to answer under oath, and if possessed of no other evidence, or means of obtaining it, he must accept or at least yield to the answer as true. The appellant alleges that when he brought his first suit, though he was certain of the fact, he was without competent evidence that Faurot had been a party to the fraud practiced upon him. There was therefore no alternative but to require the respondents to answer under oath, and, that having been done, the proposition that "neither party is bound to make any revelation of his case to the other" was not applicable. On the contrary, it became imperative upon the respondents to make a frank and full disclosure, and not, by concealing anything of which good faith and common honesty required confession, to mislead the complainant into the abandonment of this suit. The false answer was, under the circumstances, a "positive and actual fraud," both upon the complainant and upon the court. It was an additional or new fraud, distinct from that against which relief was sought; and by means of it, as the demurrer admits, the decree for the dismissal of the bill was obtained. It is certainly against conscience and reason that a decree so obtained should be available, for any use, to one implicated in the fraud by which it was procured.

It is urged, however, that after the dissolution of the temporary injunction the appellant, finding himself without evidence to maintain his suit, should have dismissed his bill, instead of allowing the case to be disposed of as it was by a decree, which, it is insisted, is res judicata between the parties, making inadmissible the evidence relied upon for relief. It is evident now that a dismissal of the suit would have been, and perhaps at the time ought to have been perceived to be, the better course; but it is not for the appellee to insist that by such an error of judgment, attributable to his own confessed perjury, which made the complainant hopeless of success in the suit, all right to relief was lost. That was not the result, unless the doctrine of res judicata, as applied in U. S. v. Throckmorton and like cases, compels it. It is alleged in the present bill that the complainant was not present, in person or by solicitor, at the hearing, if any was had, and upon information and belief it is averred that no evidence was in fact heard; but these averments, it is contended, are not available, because inconsistent with the recitals of the decree, it not being alleged that the complainant was entitled to notice of the hearing, nor that his absence was the fault, or caused by the fraud, of the defendants. It is evident that the presence or absence of the complainant at the hearing was not an essential feature of the situation. If he had been present he could have done nothing to change the result of the hearing. It is not true, however, as we conceive, that the bill charges no fraud in connection with the rendition and entry of the decree. The filing of the false answers and affidavits was a fraudulent act of continuing force, operative to prevent the attention of the complainant to what thereafter might be done in the case, and at the hearing effective as evidence without which the decree could not have been given. But while it is clear,

and perhaps not disputed, that false recitals in a judgment or decree fraudulently procured by the party setting it up as an estoppel do not prevent, proof of the facts under a bill to set aside the judgment on account of the fraud, it is insisted that evidence of the facts here averred is not admissible, because the only matter charged as a fraud was in issue in the first suit, and that no extrinsic or collateral fraud is charged. It is conceded in U. S. v. Throckmorton that relief may be granted when some fraud practiced directly upon the party seeking relief from a decree or judgment has prevented him from presenting all of his case to the court, but the doctrine is said to be equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed; and after quoting from various authorities, among which Greene v. Greene, 2 Gray, 361, is said to contain perhaps the best discussion of the whole subject, the court deduces the doctrine, and declares it the basis of its decision of the case, "that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." The reason of the rule is stated in the next sentence to be "that the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." We are of opinion that the present case does not come within the strict letter, and certainly not within the spirit or reason, of the rule. There was in this case no trial. The complainant having failed to reply, and the case being submitted under the statute of the state which made the answer conclusive proof, there was no conflict nor weighing of evidence. A decree for the respondents went as a matter of course. There was practically a default on the part of the plaintiff, brought about by the false answers and affidavits. Technically the answers were evidence at the hearing, but before the hearing they served the distinct purpose of denying to the plaintiff information which the respondents were under a duty to furnish, and so of depriving him, before the test of trial, of his standing in court. That was an extrinsic, collateral fraud, distinct from and antecedent to the use of the answers as evidence at the hearing. If, instead of filing sworn answers to the bill, the respondents, by means of voluntary affidavits, affirming the same matters falsely alleged in the answers, had procured the consent of the appellant to the entry of a decree dismissing the bill for want of equity, the fraud, it is clear, would have been one for which the decree could be annulled or its use enjoined. Is the case essentially different when the same fraudulent advantage of the appellant was obtained by means of false statements in answers, which by the rules of practice the respondents were compelled to make under

oath? In Marshall v. Holmes the alleged fraud consisted in "false testimony and forged documents" employed at a contested trial at law, without prior use in any way to affect the conduct of the plaintiff in preparing for or conducting the trial; and the court, in determining whether the bill showed a case of equitable cognizance of which a federal court could acquire jurisdiction by transfer from a state court, speaking by Mr. Justice Harlan, said:

"While the court, upon final hearing, would not permit Mrs. Marshall, being a party to the actions at law, to plead ignorance of the evidence introduced at the trial, it might be that relief could be granted by reason of the fact, distinctly alleged, that some of the necessary proof establishing the forgery of the letter was discovered after the judgments at law were rendered, and after the legal delays within which new trials could have been obtained, and could not have been discovered by her sooner. It was not, however, for the state court to disregard the right of removal upon the ground simply that the averments of the petition were insufficient or too vague to justify a court of equity in granting the relief asked. The suit being, in its general nature, one of which the circuit court of the United States could rightfully take cognizance, it was for that court, after the cause was docketed there, and upon final hearing, to determine whether, under the allegations and proof, a case was made which, according to the established principles of equity, entitled Mrs. Marshall to protection against the judgments alleged to have been fraudulently obtained."

If there is here any inconsistency with the opinion in U. S. v. Throckmorton, to which reference was made, it was not the result of oversight, and ought perhaps to be regarded as an intentional modification of the earlier utterance. But whether there is conflict between the two opinions, or how they are to be reconciled, we need not consider. The present case, if we have properly interpreted the facts alleged, is distinguished from both, and rests upon an equity of which there can be no just denial. In reason and good conscience a decree obtained as this one is alleged to have been ought to be annulled. There can be no consideration of public policy or of private right on which it ought to stand. There can be and ought to be no repose of society where for such wrongs the courts are incapable of giving redress. The decree of the circuit court is reversed and the cause remanded, with direction to overrule the demurrer to the bill.