CLIFFORD D. MARSHALL, APPELLEE, V. EDWARD W. ROWE ET AL., APPELLANTS.

FILED APRIL 27, 1934. No. 28952.

*Cleary, Suhr & Davis* and *John J. Ledwith,* for appellants.

*Prince & Prince, Winfield M. Elmen, Marcus L. Poteet* and *Walton B. Roberts, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

EBERLY, J.

This proceeding presents separate appeals by Edward W. Rowe and Benjamin R. McGrath from a decree in equity setting aside a satisfaction of judgment, which judgment was made and entered on April 28, 1915, against the appellants jointly and in favor of Clifford D. Marshall, and reviving the original judgment. This "satisfaction of judgment," thus canceled, is in writing, was executed by Clifford D. Marshall and acknowledged by him on November 26, 1920, and was filed in the office of the clerk of the district court for Lancaster county on December 1, 1920. In consideration of $1,500 received, this satisfaction of judgment by its terms releases and forever discharges the defendants from any liability for or on account of said judgment, and expressly accepts the said sum in full satisfaction of said judgment, interest and costs.

The history of this litigation may be summarized as follows: The original judgment was entered in the dis-

trict court for Lancaster county, Nebraska, in favor of appellee and against the appellants in an action for malpractice as physicians, for the sum of $2,000 and $170 costs of suit. From this judgment an appeal was prosecuted to this court, where it was affirmed on April 2, 1917. On April 26, 1917, an execution was issued thereon out of the district court for Lancaster county to the county sheriff and returned "wholly unsatisfied." On April 27, 1917, a proper transcript of this judgment as entered in Lancaster county was filed in the office of the clerk of the district court for Hall county, that being the county of the then residence of Dr. McGrath, defendant, and an execution was issued thereon by the proper officer to the sheriff of Hall county, and thereafter on May 7, 1917, said execution was by the sheriff of Hall county returned "wholly unsatisfied." On May 8, 1917, Clifford D. Marshall commenced a proceeding in equity in the district court for Hall county, in the nature of a creditor's bill. The petition in equity then filed therein by plaintiff embraced twelve numbered paragraphs, in which, among other allegations usual to creditors' bills, it was charged that on June 1, 1914, while the action was pending against him in the district court for Lancaster county in which the judgment referred to was ultimately entered, Benjamin R. McGrath purchased the southwest quarter of section 4, township 10 north, range 11, west of the 6th P. M. in Hall county, Nebraska, for and in consideration of $16,000, and had the fee title conveyed to his wife, Susan E. McGrath, and that McGrath paid the sum of $12,000, and that his wife paid no part thereof; and further set out at length positive and detailed allegations disclosing that McGrath was the real owner thereof, and that this conveyance was so made for the express purpose of hindering, delaying and defrauding McGrath's creditors of whom such plaintiff was one, and which it is alleged was "in furtherance of the scheme and design on the part of the said Benjamin R. McGrath to cover up and conceal his property, and particularly said premises, from this plaintiff, for the purpose of avoiding

the collection of said judgment; and plaintiff alleges that said premises actually are owned by, and belong to, said Benjamin R. McGrath." This petition, duly verified, closes with an appropriate prayer that the ownership of the land may be determined as alleged, and that the premises be decreed to be sold and the judgment satisfied from the proceeds thereof. It appears also that a notice of *lis pendens* was filed in connection with the petition.

To this petition on July 10, 1919, McGrath filed his answer, in the following words: "Now comes the defendant, Benjamin R. McGrath, and in answer to the petition of the plaintiff filed herein denies each and every allegation in said petition contained." It was thereafter verified by him under oath in the following language: "That he has read the same, knows the contents thereof, and that the facts stated therein are true as he verily believes."

As a part of said proceeding the deposition of one Anna Blanchard was taken, in the course of which an original letter from Mrs. Benjamin R. McGrath, the doctor's wife, also two letters of the cashier of the bank of which Dr. McGrath was a patron, and one from Dr. McGrath himself were produced, identified, and attached to the deposition so taken as a part thereof. Each of these letters tended in a substantial degree to establish the truth of plaintiff's contention as to the true ownership of the land then in suit. The following is a copy of Dr. McGrath's letter, above referred to:

"B. R. McGrath, M. D. 111½ West Third Street, Grand Island, Nebr. October 2, 1914. Stull Brothers, Omaha, Nebr. Gentlemen: I am inclosing my check for one-hundred-ten dollars in payment of interest coupon now due on the note of Charles J. S. Trout. I have bought the land (S. W. ¼, 4-10-11) upon which mortgage was given to secure this note. Please send the coupon to me. Respectfully, B. R. McGrath."

This deposition, including these letters referred to, was filed in the cause in the office of the clerk of the district court for Hall county on February 7, 1920.

On March 28, 1918, garnishment proceedings were commenced by plaintiff Marshall against Susan E. McGrath and the First National Bank of Grand Island, Nebraska, and service of summons in garnishment was made upon the parties named. On June 3, 1918, the proceedings were dismissed as to the bank. The record discloses no examination of Susan E. McGrath. There was also a motion filed on October 20, 1919, for an examination of Dr. McGrath under the provisions of the statute, now section 20-1566, Comp. St. 1929. It affirmatively appears that no examination of Dr. McGrath was had, nor were there any examinations of the garnishees. But thereafter an agreement of settlement of the entire controversy was entered into between Marshall and two doctors. Pursuant to this settlement the doctors paid to Marshall the sum of $1,500 in cash, each contributing one-half of such amount. Marshall accepted this sum and thereupon, pursuant to his application, on November 27, 1920, there was entered in this cause in the district court for Hall county the following order: "Now on this day this cause came on for hearing, and upon application, this case is dismissed with prejudice, at plaintiff's costs, and *lis pendens* released." In addition to this, and as a part of the same transaction, there was duly filed in the district court for Lancaster county on December 1, 1920, the "satisfaction of judgment" which by the order appealed from was canceled.

The record further discloses that Susan E. McGrath died on June 9, 1925, and at the time of her death she was the owner of the record title in fee simple of certain real estate, a portion of which was situated in Hall county, Nebraska; that on July 28, 1926, Dr. McGrath commenced an action against the children of his deceased wife, who, with himself, constituted her sole heirs, the purpose of which was to secure a decree determining that he was the sole owner of the real property described therein, of which Susan E. McGrath died seised. On August 20, 1926, in the trial of this proceeding, Dr. McGrath testi-

fied, in substance, that he had purchased in 1914, and out of his own funds paid for, the southwest quarter of section 4, township 10 north, range 11; that he had by agreement with his wife caused the title to be conveyed to her as "a protection that doctors frequently use on account of the frequency of damage suits;" that this land was sold in 1921 and the proceeds thereof invested in lands, the title to which was vested in his deceased wife for the same purpose, and that Dr. McGrath was at all times the real and true owner thereof. At the conclusion of the cause on August 31, 1926, a decree was entered quieting the title to the lands in controversy in Dr. McGrath as prayed.

The disclosures made by Dr. McGrath in this proceeding were a signal for renewed activity on the part of plaintiff herein. On December 9, 1926, there was filed in the district court for Hall county, Nebraska, a petition in equity in which Clifford D. Marshall was plaintiff and Benjamin R. McGrath was defendant. The first twelve paragraphs of this petition were substantially identical with the allegations contained in the petition in equity filed by plaintiff in the district court for Hall county on May 8, 1917, hereinbefore referred to, and which were appropriate to a creditor's bill. In addition this petition contained further allegations which may be briefly summarized as follows: That in said proceeding said Benjamin R. McGrath on July 10, 1919, filed a duly verified answer denying each and every allegation contained in the plaintiff's petition; that Benjamin R. McGrath, in a proceeding instituted under the statute in aid of execution, under oath, had denied the ownership of the real estate involved therein; that these statements were false; that plaintiff was unable to disprove these false and fraudulent statements, but was compelled thereby to accept the terms of the settlement, and released the original judgment and the other proceeding then being carried on to enforce the same; that plaintiff was unable to disprove such fraudulent statements until Dr. McGrath had testified on August 30, 1926. This petition closes with an appropriate prayer.

It further appears that the defendant McGrath demurred to this pleading on six grounds, the sixth of which was: "That the petition does not state facts sufficient to constitute a cause of action against the defendant."

On September 12, 1928, the following order was entered in the cause (omitting title): "Now on this day the demurrer heretofore heard on March 21, 1928, came on for hearing in open court, and said demurrer is hereby sustained, to which the plaintiff excepts, and elects to stand on demurrer." It is also conceded that no appeal was ever taken from this judgment, and that it remains in full force and effect.

The prayer of the amended petition, to which the demurrer was sustained, included the following: "Plaintiff prays that the releases hereinbefore set forth may be set aside; that the dismissal of the creditor's bill may be set aside and said writ reinstated; that the judgment hereinbefore referred to may be reinstated, revived, and held to be a lien on (premises described); that said alleged settlement, dismissals and cancelation may be set aside and held for naught; that the defendant may have credit for the amount paid; * * * and that the real estate described * * *' may be subjected to the balance remaining unpaid," and for general relief.

Thereafter on September 24, 1928, the plaintiff filed in the original case of Marshall v. Edward W. Rowe and Benjamin R. McGrath in the district court for Lancaster county, Nebraska, a verified application to set aside the satisfaction of judgment filed therein on December 1, 1920. To this application the defendants separately demurred, and these demurrers were sustained by the district court, and the proceeding dimissed. On appeal to this court the action of the trial court was reversed. See *Marshall v. Rowe*, 119 Neb. 591, to which reference is made for a resumé of the allegations of the pleading then involved.

The proceedings now presented to this tribunal, based on and including the motion to set aside the satisfaction of judgment and the petition in equity filed in the district

court subsequent to the remand from the supreme court, were consolidated in the district court. Separate answers of the defendants were filed to these consolidated pleadings and issues were finally made up by the filing of plaintiff's reply. Over 100 pages of the transcript are devoted to the pleadings in the district court for Lancaster county which formed the issues of the present trial. To abstract them so as to fairly disclose all the issues joined would unduly extend this opinion. A trial on the merits resulted in a decree for the plaintiff, as already set out herein, and defendants appeal.

Without passing on the validity of certain technical defenses presented by the defendants, two issues may be taken as controlling on this review, viz., fraud, and the statute of limitations. Appellee's position on this subject fairly appears in the following excerpt from pages 4 and 5 of his brief: "Our theory of the case is that the judgment of the supreme court was something more than a scrap of paper. It meant a positive order to McGrath to pay that judgment; that, when the supreme court made that order and an execution was issued, McGrath owed an affirmative and positive duty to disclose immediately that he owned the property in question; that, when a creditor's bill was filed, the appellant, Benjamin R. McGrath, had no right to file a general denial and compel Marshall to dig out the facts. Instead, it was McGrath's duty to come into court and disclose the facts."

Futhermore, appellee asserts that this general denial thus filed by McGrath in 1919 was a positive and actual fraud, and was an additional or a new fraud distinct from that against which relief in the original creditor's bill was sought and by means of which the settlement was made, which resulted in the execution of the satisfaction of judgment which the decree appealed from canceled and set aside. In support of this contention there is cited *Graver v. Faurot*, 76 Fed. 257, and *Guild v. Phillips*, 44 Fed. 461, as approved in *Munro v. Callahan*, 55 Neb. 75, as sustaining it and controlling.

We are unable to accept the conclusion thus urged by appellee, either as to the affirmative legal duty of McGrath to disclose, or the effect of the general denial filed by him. We are convinced that this contention on part of plaintiff is not sustained by the precedents cited in support thereof in his brief, and involves an erroneous interpretation of the controlling principles involved in the transaction.

Plaintiff's claims are fundamentally predicated upon the doctrine announced in *Graver v. Faurot,* 76 Fed. 257, and *Guild v. Phillips,* 44 Fed. 461. The scope and effect of these decisions are to be determined in the light of the procedure they exemplify. This harks back to the days of the common law when under its inflexible rules parties to an action were incompetent as witnesses. In course of time it appears there was developed in the chancery courts a system of pleading which among its remedies included bills in equity involving a compulsory discovery on part of the defendant by means of an answer under oath. Two classes were recognized, viz.: One of which involved the discovery of facts resting in the knowledge of defendant and seeking no relief in consequence of such discovery, but seeking discovery merely in aid of some other proceeding either at law or in equity pending or about to be brought. The other form, while a bill for relief and discovery incidental thereto, withdrew the case from the legal forum and brought it for decision before a court of equity. It may, however, be said in passing that under the former practice the same principles governed "discovery" whether the right thereto was invoked in aid of other issues involved in an equity suit or in aid of an action at law. 18 C. J. 1057.

Prior to our reformed Code procedure, bills in chancery as employed to secure discovery, either as the primary relief sought or as incidental to sustain other issues in the suit wherein discovery was sought, necessitated the employment of a highly technical, complex and artificial form of allegation, according to which in the approved manner was set forth facts on which plaintiff's claim for relief

was based. This pleading ordinarily embraced nine essential and distinct elements or parts. Three of these essentials were "the stating part," "the interrogative part," and "the prayer for relief." The general interrogative part of the bill specified the scope and extent of the information required, and as to it, if oath was not waived by plaintiff, the defendant was expressly required to make full disclosure as to the whole subject-matter, and in addition it became customary to insert specific questions as to which plaintiff particularly desired discovery. Adams, Equity (8th ed.) 307. But, "Where the bill is one for both relief and discovery, a waiver of answer under oath is a waiver of the right to discovery, and an answer giving discovery cannot be compelled." 18 C. J. 1069.

It may also be noted that the rule governing this practice in federal courts, which prevailed at the time the two cases heretofore cited were decided, was declared to be as follows: "The 41st, 42d, and 43d rules make the interrogatories a part of the bill, and prescribe its form; and the 40th rule declares that 'a defendant shall not be bound to answer any statement or charge in the bill, unless specially and particularly interrogated thereto; and a defendant shall not be bound to answer any interrogatory in the bill, except those interrogatories which such defendant is required to answer,'—which must be specified in a note at the foot of the bill, in the form stated." *Wilson v. Stolley,* 4 McLean (U. S. C. C.) 272. See, also, *Treadwell v. Cleaveland,* 3 McLean (U. S. C. C.) 283.

Omitting consideration of the various steps in equity pleading, as that procedure formerly prevailed, it may be said that when the defendant finally joined issue by his answer he was required therein, within the scope as fixed by the interrogative part of the bill including special interrogatories made a part thereof, to answer fully, admit or deny all facts stated therein with all material circumstances connected therewith. Unless waived by the plaintiff, this answer was required to be made under the positive oath of the defendant. By proper exceptions presented

to the chancellor the plaintiff was enabled to compel full disclosures and also to restrict the disclosures to the scope as prescribed by the interrogative part of the bill. The importance of this right to limit the answers of the defendant may be realized, when we remember that the defendant's answer thus made was more than a mere pleading. Limited to the special class of answers here under consideration, it may be said to have a twofold function, viz.: "First, to afford the information required by the plaintiff's interrogatories; and, secondly, to state the defendant's ground of defense to the plaintiff's charges." 1 Whitehouse, Equity Practice, 447.

The answer of the defendant, positively sworn to, to a bill filed against him upon a matter stated in the bill and responsive to it is evidence in his own favor, unless it is overcome by the satisfactory testimony of two opposing witnesses or of a witness corroborated by other circumstances which give to it a greater weight than the answer or which is equivalent in weight to a second witness. 4 Elliott, Evidence, 529; 1 Ency. of Evidence, 906-910; 1 Greenleaf, Evidence (13th ed.) 303; *O'Brian v. Fry*, 82 Ill. 274; *Hurd v. Ascherman*, 117 Ill. 501.

Indeed, a bill without an interrogative part, or interrogatories made a part thereof, was formerly in equity deemed insufficient. *Ball v. Sawyer*, 62 Vt. 367, 370; *Johnson v. Mundy*, 123 Va. 730; *Excelsior Wooden Pipe Co. v. City of Seattle*, 117 Fed. 140, 144.

It was also clearly the rule that beyond the scope of the general and special interrogatories as set forth in the bill the defendant had no duty to disclose, and that a plaintiff was not entitled to a discovery of defendant's case. *Hoffman v. Postill*, 4 Ch. App. Cas. (Eng.) 673.

The two cardinal rules in the law of discovery are: "First, the right, as a general proposition, of every plaintiff to a discovery of the evidences which relate to his case; and, secondly, the privilege of every defendant to withhold a discovery of the evidences which exclusively relate to his own." *Lyell v. Kennedy*, 8 App. Cas. (Eng.)

217, 224 (quoting from Wigram, Law of Discovery [1842] 14). See, also, *Kelley v. Boettcher*, 85 Fed. 55.

The cases of *Graver v. Faurot*, 76 Fed. 257, and *Guild v. Phillips*, 44 Fed. 461, exemplify the equitable procedure just discussed. Both involved on part of the respective plaintiffs the exercise of the right of discovery, under common-law procedure which has been hereinbefore substantially outlined, the limits of which were necessarily prescribed in the interrogative parts of the original bill filed in each case. The reports of these decisions before us emphasize the fact that in each case the defendant answered under oath and the substance of the answers thus made is given. Such answers, as we have seen, then stood, not alone as pleadings, but as testimony of a controlling nature. The conclusion thus finds abundant support. On the basis of this testimony, *Graver v. Faurot*, *supra*, was actually decided; and in *Guild v. Phillips*, *supra*, a consent decree was rendered because of the presence thereof. It will be remembered in this connection that, under the former practice, "the purpose of authorizing interrogatories was to enable the court to make a summary disposition of a cause by applying the law to an admitted state of facts." *Bronk v. Charles H. Scott Co.*, 211 Fed. 338, 340. So, in both cases now under consideration, the equivalent of perjured evidence entered into the disposition of the questions involved, and the judicial determinations made were based thereon; and likewise it is on the basis of perjured evidence (not sham pleading) that *Munro v. Callahan*, 55 Neb. 75, and the other Nebraska cases cited by plaintiff on the present question were decided. However, in the instant case no perjured evidence on part of the defendant appears in the record. Hence, perjured evidence could not have entered into or influenced the basic agreement of compromise of the parties. Therefore these federal cases and the Nebraska decisions following the same are not here in point.

Even if it be assumed that the case before us is within

the scope of section 901 of the Civil Code (Comp. St. 1929, sec. 20-2225) and, as such, that "the practice heretofore in use may be adopted so far as may be necessary to prevent a failure of justice," it affords the plaintiff no assistance. Tested by the controlling principles of that procedure which prevailed prior to the adoption of the Code, the petition of May 8, 1917, is absolutely barren of allegations essential to an interrogative part of a proper bill in equity, both in body and in the prayer, and entitled the plaintiff to no disclosures whatever. The answer thereto, a general denial, likewise tested by the same criterion, so far as its evidential character was concerned, was wholly insufficient because of nondisclosive nature, and the failure to attach a positive verification. If accorded any function, this general denial would amount to no more than a defensive pleading, and not a discovery of evidence. 1 Whitehouse, Equity Practice, 448. This would not bring the present case within the doctrine of *Graver v. Faurot, supra,* or *Guild v. Phillips, supra,* or within the reasoning of the Nebraska cases that cite and rely on the *Graver* and *Guild* cases as precedents.

Nor are plaintiff's contentions referred to aided when tested in the light of the provisions of our Civil Code. The second paragraph of this enactment provides: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and in their place there shall be hereafter but one form of action, which shall be called a 'civil action.'" Comp. St. 1929, sec. 20-101.

Section 90 of our Civil Code is as follows: "The rules of pleading formerly existing in civil actions are abolished and hereafter the forms of pleading in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this code." Comp. St. 1929, sec. 20-802.

Section 91 limits the initial pleading on behalf of plaintiff to a petition (Comp. St. 1929, sec. 20-803) and it is further provided by section 92 that the petition "must

contain * * * a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition." Comp. St. 1929, sec. 20-804.

Section 99 of this Civil Code provides, as to answers: "The answer shall contain: First. A general or specific denial of each material allegation of the petition controverted by the defendant. Second. A statement of any new matter constituting a defense, counterclaim or set-off, in ordinary and concise language, and without repetition." Comp. St. 1929, sec. 20-811.

These provisions not only in express terms abolish bills in equity with discovery as an incident thereto as formerly approved, but by specifications as to the nature of the statements properly to be incorporated in petitions effectively prevent the incorporation of the essential elements upon which the right of discovery as it formerly existed was based. In addition, section 20-824, Comp. St. 1929, provides expressly that an answer verified under the Code shall not be used "against a party in any criminal prosecution or action * * * as proof of a fact admitted or alleged in such pleading; and such verification shall not make other or greater proof necessary on the side of the adverse party, provided that allegations or denials made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading." So, also, a verification of a pleading is sufficient if it states that affiant believes the facts stated in the petition to be true. Comp. St. 1929, sec. 20-827; *Harden v. Atchison & N. R. R.,* 4 Neb. 521.

It appears that our Civil Code by these provisions has, as to causes of action pleaded and carried on in strict conformity therewith, effectually abolished bills of equity with discovery as incidental thereto, and that answers, save and except so far as statements therein may involve admissions against interest, have by the terms thereof been wholly deprived of the characteristics of evidence,

which they were accorded by the equity practice superseded. "In some of the states a suit for discovery, properly so called, is expressly abolished by statute, and in all of them is utterly inconsistent with both the fundamental theory and with the particular doctrines and methods of the reformed procedure." *Wright v. Superior Court*, 139 Cal. 469, 472. See, also, *Turnbull v. Crick*, 63 Minn. 91; *Leuthold v. Fairchild*, 35 Minn. 99; *Vogelsong v. St. Louis Wood Fibre Plaster Co.*, 147 Mo. App. 578; *Strudwick v. Brodnax*, 83 N. Car. 401; *Love v. Keowne*, 58 Tex. 191; *Whereatt v. Ellis*, 65 Wis. 639; *Cleveland v. Burnham*, 60 Wis. 16; *United States Tire Co. v. Keystone Tire Sales Co.*, 153 S. Car. 56.

According to the weight of authority, an answer is a pleading, the purpose of which is to notify the court and the plaintiff of the defense relied upon so that the latter may be prepared to meet it. 1 Bancroft, Code Pleading, sec. 229. "Originally, to 'defend,' in the law of pleading, imported simply a denial of that which constituted the basis of the plaintiff's claim, as alleged in his pleading." *First State Bank of Hazen v. Radke*, 51 N. Dak. 246.

Our Code accords to the defendant the right to require the plaintiff to establish by proof all the material facts necessary to show his right of recovery. Plaintiff's pleadings under the Code do not reach the defendant's conscience as was formerly the result of bills of equity under the chancery practice. Pomeroy, Code Remedies (5th ed.) sec. 561; 1 Bancroft, Code Pleading, sec. 233; *Keens v. Robertson*, 46 Neb. 837; *Phenix Ins. Co. v. Bachelder*, 39 Neb. 95; *Walton Plow Co. v. Campbell*, 35 Neb. 173. It appears that a general denial is proper where the defendant *bona fide* challenges a single element of those essential to plaintiff's recovery *(Upton v. Kennedy*, 36 Neb. 66) ; and that this pleading under the theory of our Code will not be interpreted as a response to a search of the conscience of the defendant in the manner required under the former practice in equity through the agency of bills in equity with discovery as an incident thereto.

The fundamental reason which supports this construction of our Code provisions is to be found in its provisions, where (1) the incompetency of parties to the action to testify has largely been removed, and the deposition of the defendant covering all facts in issue in any particular litigation may be secured by the plaintiff prior to trial *(Kansas City, W. & N. W. R. Co. v. Conlee,* 43 Neb. 121; *In re Hammond,* 83 Neb. 636); (2) provisions enabling the plaintiff to secure the production of all papers in defendant's possession or control relating to, and necessary for, the proper determination of the issues made by the pleading (Comp. St. 1929, secs. 20-1267 to 20-1273); (3) provisions which permit the defendant in creditors' suits to be examined in aid of execution (Comp. St. 1929, secs. 20-1566, 20-1567). In view of these statutory enactments it becomes obvious that the reasons which necessitated the former equity practice have passed away. It follows that, considered in and of itself, the filing of a verified general denial by Dr. McGrath to the petition of the plaintiff in 1919 was the exercise of a right accorded him by statute to put plaintiff to his proof, and was not the commission of a fraudulent act, for he then owed no legal duty of disclosure to plaintiff as a matter of pleading.

It appears from the record that the settlement upon which the "satisfaction of judgment" in suit was based was the result of the efforts of the representatives of both Dr. McGrath and Dr. Rowe. Neither of the doctors personally took active part in the negotiations that led up to it. Each doctor contributed one-half of the $1,500 paid. Dr. Rowe acted in the utmost good faith in this matter, personally borrowed the amount contributed by him, and the pleading makes no charge of fraud against him. Further, it affirmatively appears that Dr. Rowe, at the time of this settlement, had no knowledge of any fraudulent conduct on part of Dr. McGrath.

Plaintiff's claim is that, until Dr. McGrath's testimony as to the facts and ownership of this land given on August 20, 1926, became a matter of court record, he had, though

suspicious, lacked necessary proof to establish these facts. In this connection the rule in this jurisdiction is that the knowledge of a client's attorney is attributable to and binds the client, where such attorney is acting regularly in good faith in that capacity for his client. *Goergen v. Department of Public Works*, 123 Neb. 648. See, also, *Security Trust Co. v. Tuller*, 243 Mich. 570; *Bates v. A. E. Johnson Co.*, 79 Minn. 354. As already indicated, the verified petition filed in plaintiff's behalf in the district court for Hall county on May 8, 1917, positively stated the facts of this real estate transaction substantially identical with those as testified to at that time by Dr. McGrath. In addition to this, the deposition filed in this cause as early as February 7, 1920, in connection with original documents made a part thereof, not only clearly revealed the fraudulent character of this land transaction, but in connection with surrounding circumstances might be deemed ample evidence to sustain plaintiff's pleading to the extent of establishing a *prima facie* case. In addition to putting the plaintiff on inquiry, obvious sources of additional information were indicated. The rule is that, "Where one is put upon inquiry, he is to be charged with notice of all such facts as he would have learned by reasonable inquiry." *Talich v. Marvel*, 115 Neb. 255 (quoting from *Cooper v. Newman*, 45 N. H. 339).

While it unmistakably appears from the entire record that this real estate transaction of Dr. McGrath was a fraud, and that his acts in connection therewith were fraudulent, yet the fact remains that he made no false statements, claims or representations concerning this land, or the ownership thereof, and committed no fraud in connection with the same, save the fraudulent concealment effected by the transfer of the record title thereof to his wife in 1914. On this state of facts the statute of limitations is tendered as a defense. Our Code provides that civil actions can only be commenced within four years for relief on the ground of fraud, "but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." Comp. St. 1929, sec. 20-207.

Within the intendment of the terms of the statute just quoted the record establishes that the plaintiff in fact discovered this fraud not later than January 29, 1920, that being the day when the deposition was taken of which the letters signed respectively by Dr. McGrath, by the doctor's wife, and by the banker, all relating to the southwest quarter of section 4, township 10 north, range 11, were produced and made a part, which deposition was subsequently filed in the district court for Hall county on February 7, 1920. It necessarily follows that the action is barred. *Hanna v. Bergquist,* 102 Neb. 658; *Wood v. Carpenter,* 101 U. S. 135; *Coad v. Dorsey,* 96 Neb. 612; *Parker v. Kuhn,* 21 Neb. 413.

We have no occasion to examine into the validity of the original settlement or compromise between these parties, or the legal effect of the steps taken. These occurred long after knowledge of the fraudulent transfer involved became imputable to the plaintiff.

"It is obvious that there can be no fraud where the agreement is entered into with knowledge of the facts." 12 C. J. 349. This proceeding to set aside the "satisfaction of judgment" was commenced in the district court for Lancaster county on the 24th day of September, 1928, more than eight years after the cause of action, if it ever existed, accrued. The controlling maxim invoked by this record is: "The laws assist those who are vigilant, not those who sleep over their rights." Broom's Legal Maxims (9th ed.) 570.

It follows that the district court erred in the decree entered in behalf of the plaintiff, in setting aside said satisfaction of judgment dated November 26, 1920, and filed in the district court for Lancaster county in case designated as Docket 53, No. 45, and in reinstating the judgment satisfied thereby. This decree is therefore reversed, with directions to reinstate said satisfaction of judgment, and to set aside the order reinstating said judgment, and to dismiss said proceeding of plaintiff with prejudice to further action.

REVERSED.