LEWIS H. HOLLENBECK, APPELLANT, V. GUARDIAN NATIONAL LIFE INSURANCE COMPANY ET AL., APPELLEES.

14 N. W. 2d 330

FILED MAY 5, 1944. No. 31627.

T. R. P. *Stocker* and *Bruce Fullerton,* for appellant.

*Allen, Requartte & Wood* and *James L. Brown, contra.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER and WENKE, JJ.

SIMMONS, C. J.

This is an action in which plaintiff charges that the defendants conspired, and cheated and defrauded him of certain bonds and securities, and seeks to recover $13,000 damages therefor. Defendants denied generally, pleaded a prior suit, dismissal and settlement, and the statute of limitations. Plaintiff by reply pleaded that the prior action and proceedings subsequent thereto were a part of the conspiracy, and that he received nothing of value therefrom. Trial was had, and at the close of plaintiff's case, the court dismissed the action, basing its decision upon the statute of limitations. We affirm the decision of the trial court.

The parties defendant to this action, as named in the caption of the petition, were Guardian National Life Insurance Company, a corporation, William L. Richardson, Samuel J. Fieselman and Rose I. Haist. It is not shown that service was had upon Richardson, nor did he appear in the action. The action proceeded against the other named defendants.

We review the evidence in the light of the established rule that "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on be-

half of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." *Bowerman v. Greenberg,* 142 Neb. 721, 7 N. W. 2d 711.

Plaintiff is a farmer. He and his wife accumulated savings from time to time, which they considered as jointly owned. These savings were invested in mortgage bonds and other securities. Some of these securities were purchased from a company with which defendant Fieselman was connected. In 1929 plaintiff became acquainted with Richardson. Early in 1932 Richardson approached plaintiff and told him that he (Richardson) and others were planning on organizing a mutual insurance company, and needed securities to deposit with the state, and sought some of plaintiff's securities for that purpose, promising increased earnings and a delivery of surplus notes of the insurance company to the plaintiff. During these conversations Richardson told the plaintiff that defendants Fieselman and Haist would be connected with the new company, which would likely be known as the Guardian National Life Insurance Company. March 26, 1932 (plaintiff's wife signing a memorandum), it was agreed that $10,000 should be placed "in surplus notes of the Guardian National Life Ins. Co. upon demand by Wm. L. Richardson." On April 2, 1932, plaintiff's wife signed a statement listing certain bonds "to be given to Wm. L. Richardson." Under date of April 4, 1932, Richardson acknowledged receipt of said securities listed at $10,000. About that time a proposal, more in detail, as to the formation of the company was prepared and discussed with the plaintiff and his wife, at which time a lawyer, later counsel for defendant company, was present, prepared the proposal, and recommended the proposed company. Also, on April 4, 1932, Richardson signed a statement agreeing to give plaintiff's wife "1% commission on all first year premiums received in this State." On May 5, 1932, Richardson receipted for $9,500 first mortgage bonds,

to be "used for temporary surplus." These are not the same bonds as the $10,000 block of securities for which receipt was previously given. On October 10, 1932, Richardson receipted for $5,100 bonds (not listed and purpose not stated). It appears that some of these bonds were passed back and forth between Richardson and the plaintiff, and some disposed of by Richardson, with plaintiff's knowledge, for purposes other than the insurance company. The exact amount of bonds which plaintiff appears to claim was received by Richardson at this time was $15,100, although that amount was reduced by later transactions between plaintiff and Richardson. Plaintiff does not know for sure which ones Richardson took for the company.

Richardson became a director of the American Indemnity Life Insurance Company in December, 1932. The name of that company was changed to Guardian National Life Insurance Company in January, 1933, and defendants Fieselman and Haist became president and secretary-treasurer, respectively, and Richardson, vice-president. Richardson resigned as vice-president and director in June, 1933, and thereafter was agency manager and general agent until August 1, 1934, when his connections with the company were terminated.

On February 3, 1933, defendant company issued to plaintiff and wife its voucher check for $45. This check (on the voucher) listed $6,600 of plaintiff's bonds and showed interest due of $145. Defendant Haist, called as a witness by plaintiff, testified that this check was issued at Richardson's direction on figures submitted by him, and the amount charged to Richardson's account with the company.

Also, Richardson sold plaintiff, his wife and daughter thrift policies in defendants' company in February, 1933. Defendants' records show premiums paid to August 20, 1934, on these thrift contracts. On August 2, 1934, Richardson, signing as agency manager for defendant company, stated on a plain piece of paper that the thrift premiums were paid in full to January 1, 1935. This was not brought to the attention of the officers of the company. Richardson

also sold plaintiff a life insurance policy on March 2, 1934, and issued a company receipt for the premium. The defendants' records show that the net of the premium was paid to the company by Richardson, and that the thrift premiums were charged to Richardson's account. Plaintiff paid nothing for any of this insurance, and testified that the interest due him on his securities was to pay these premiums. The life policy lapsed in 1935.

At different periods during this time, plaintiff and his wife called upon defendants at their place of business, found Richardson there, and received assurances that he was a reliable representative of the defendant company.

Two $1,000 bearer bonds which plaintiff turned over to Richardson were shown to have become the property of the company. However, defendant Haist testified that those bonds were secured in due course from one Burrill and not from Richardson. None of the other securities ever was shown to have been in the possession of the company. What Richardson did with them is not disclosed.

Thus the matters stood, when, early one morning in August, 1934, Richardson, much excited, called upon plaintiff at his home and told him and his wife that the only way they could get their money was to bring suit against the company. Plaintiff agreed to do so. Richardson employed an attorney who prepared a petition, based upon the transactions herein recited, wherein the plaintiff sued the company, Fieselman, Richardson and Haist for damages. Plaintiff signed and acknowledged the petition on August 20, 1934, although he read only the last of the three pages. The petition was filed on the same day. Later Richardson came to plaintiff and told him that if the suit went through it would break the company, and the plaintiff and other people would lose their money. Plaintiff then signed a dismissal of the action with prejudice on September 26, 1934, and the instrument was filed in the action September 28, 1934. Richardson paid the attorney for his services in the action. Also, on September 26, 1934, plaintiff and his wife executed and acknowledged a "Release and Settlement," releasing

these defendants and others (not including Richardson) "from any and all obligation or liability of every kind or description * * * growing out of the facts set forth" in the action referred to above.

It further appears that Richardson was at this time settling with the company and that the company required that this suit be dismissed as a part of the settlement. Richardson told plaintiff that the company "would see that we would get our money."

Also, in October, 1934 (day not given), Richardson and plaintiff entered into a written "agreement" reciting that Richardson owed plaintiff $9,550, which was to be due and payable within three years and payable in bonds "that are paying interest." This instrument also recited that plaintiff had "turned" to Richardson $3,450 surplus notes of the company, which were to be dealt with by Richardson as he deemed advisable, and that Richardson was to "turn over" to plaintiff bonds in exchange for said surplus notes. Plaintiff's wife witnessed this agreement. Plaintiff entered into this agreement of October, 1934, "in place of" his lawsuit. Plaintiff received $3,450 in surplus notes from Richardson at the time or before this agreement was entered into, and these were returned to Richardson.

Sometime between September and the latter part of December, 1934, the defendants Haist, Fieselman and Richardson, told plaintiff "they would pay it in three years if I would give them time."

On December 30, 1934, Richardson and plaintiff entered into an "agreement" whereby Richardson agreed to "furnish" plaintiff $4,550 in surplus notes of the company drawing 6 per cent interest (Richardson to pay an additional 2 per cent) ; and Richardson agreed to "furnish" plaintiff a specified $7,200 in mortgage bonds. The recited consideration was the "relinquishment of all personal indebtedness" of Richardson to plaintiff. Plaintiff acknowledged receipt of $1,450 in "surplus notes and all outstanding interest obligations as of January 1, 1934." Plaintiff did not receive the mortgage bonds. Although plaintiff took the matter up

at different times with Richardson, he made no demand upon these defendants between the close of these transactions and just before the present action was instituted on July 7, 1941.

Under these circumstances is the statute of limitations a defense? Section 20-201, Comp. St. 1929, provides: "Civil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued." Section 20-207, Comp. St. 1929, provides: "Within four years * * * an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The established construction of this statute is that "An action for relief on the ground of fraud may be commenced only within four years after the discovery of the facts constituting the fraud or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery." *Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 559, 259 N. W. 630.

It is a further rule that "Where one is put upon inquiry, he is charged with notice of all such facts as he would have learned by reasonable inquiry." *Talich v. Marvel*, 115 Neb. 255, 212 N. W. 540.

It is obvious that plaintiff knew the facts of this alleged fraud on or before he brought his action in 1934; he knew that his securities had been delivered to Richardson; he knew that Richardson had disposed of them to some one; he knew that the defendant company was in existence; he knew its officers; he knew that he had not received surplus notes, or other securities therefor; he knew that the defendant company and its officers did not propose to issue the surplus notes in exchange; he was advised that if he was to recover his losses he would have to sue; he did so, and although disclaiming knowledge of the recitals in part of the petition, he does not disclaim knowledge of the facts upon which the petition seeking recovery was based; he knew that he had a claim against these defendants for he executed a written release thereof; he knew that his securities

were gone for he accepted Richardson's promise to pay in other securities. The record shows these and other facts were known to him in 1934. It is likewise obvious that other facts, such as the records of the company disclosed, could have been developed had he made reasonable inquiry or pursued his 1934 litigation to trial and determination.

It further is apparent that he knew or that reasonable inquiry, if pursued, would have revealed in 1934 every fact of the alleged fraud which he produced at the trial of the action. In fact, the record is barren of any discovery of any fact relating to the alleged fraud which occurred between the date of the events of 1934 and the filing of the instant action.

During this period of six and one-half years, plaintiff sought no information of these defendants regarding these transactions, made no demands upon them, and they made no representations to him and concealed nothing from him. The statute began to run on this action in the latter part of 1934 at the latest. See *Marshall v. Rowe*, 126 Neb. 817, 254 N. W. 480.

We are not unmindful of the fact that in the October, 1934, agreement with Richardson, a three-year period was fixed for the performance of the terms of that instrument. It was, however, time given for the performance of a settlement agreement, and not the performance of the agreement upon which the plaintiff surrendered his securities and upon which the charge of fraud is based. The October agreement was one clearly between Richardson and the plaintiff, made after Richardson's connections with the defendant company had been severed. It recited the existence of a debtor and creditor relationship between Richardson and plaintiff; did not purport in any way to bind these defendants; and was made after these defendants had been released and discharged from liability by the plaintiff. It further appears that the October agreement with Richardson was superseded by the December agreement between the same parties, which fixed no extended period for performance.

We are also mindful of the testimony of the plaintiff that Richardson, Fieselman and Haist orally promised, sometime in late 1934, that "they would pay it in three years if I would give them time." This, however, was a promise, if binding and enforceable, which we do not decide, that these named defendants would pay some undisclosed amount in settlement. It was a promise not made as a part of the alleged fraudulent transaction, but one made to plaintiff when he had full knowledge and notice of the facts upon which his present action is based and was a promise to give something in settlement of a claim of alleged fraud. This court has quoted with approval the rule that "there can be no fraud where the agreement is entered into with knowledge of the facts." *Marshall v. Rowe, supra.*

This promise can be of no avail to toll the statute for another reason. This is not an action based upon the promise, but upon the alleged fraud in securing plaintiff's securities. It is a tort action. The rule is that "A new promise as an agency for the continuance or revival of a cause of action operates only in the field of contractual obligations to save a remedy as against the bar of a statute of limitation." It does not apply to a cause of action for a tort. *Burleson v. Langdon,* 174 Minn. 264, 219 N. W. 155. See 37 C. J. 1097; 17 R. C. L. 894; 34 Am. Jur. 235; 1 Wood, Limitations (4th ed.) 354; *Briley v. Crouch,* 115 Fed. 2d 443.

Section 20-216, Comp. St. Supp. 1941, provides in part: "In any case founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise: * * * ." This statute applies to actions founded on contract. It has no application to actions founded on a tort liability. *Marchetti v. Atchison, T. & S. F. Ry. Co.,* 123 Kan. 728, 255 Pac. 682; *Montgomery County Commissioners v. McKittrick,* 141 Kan. 283, 40 Pac. 2d 352.

It follows that the trial court properly held the plaintiff's

action was barred by the statute of limitations.   The judgment of the trial court is affirmed.

AFFIRMED.