CHARLES R. FENTRESS, APPELLANT, V. THE CO-OPERATIVE REFINERY ASSOCIATION ET AL., APPELLEES.

31 N. W. 2d 225

Filed March 3, 1948.    No. 32319.

*S. L. O'Brien* and *Charles A. Fisher,* for appellant.

*E. D. Crites* and *W. R. Metz,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LIGHTNER, District Judge.

SIMMONS, C. J.

In this action plaintiff, a volunteer fireman, sought a recovery in damages for personal injuries received as a result of an explosion of a motor fuel tank on a burning gasoline and fuel oil transport. Trial was had. At the close of plaintiff's case-in-chief the trial court on motion of defendant dismissed the cause with prejudice. The plaintiff appeals. We affirm the judgment of the trial court.

The evidence will be reviewed in the light of the rule that a motion for a directed verdict or to dismiss is to be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed and such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of all proper and logical inferences which may be drawn from such evidence. Hollenbeck v. Guardian Nat. Life Ins. Co., 144 Neb. 684,

14 N. W. 2d 330; Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

On July 30, 1943, during the noon hour the defendant undertook to make a delivery of gasoline and fuel oil to the Farmers Union Co-Operative Oil Association at its plant at Hemingford. The Farmers Association had bulk receiving tanks. The fuel oil tanks were above ground and delivery into those tanks was made by pumping. The gasoline tank was below ground and delivery into it was by gravity. The gasoline tank was equipped with an inlet pipe and a smaller outlet pipe situated about a foot apart.

The defendant's equipment consisted of a trailer tank of 4000-gallon capacity divided into three compartments. There were large vents in the top of these compartments and outlet valves on the right side. The trailer tank contained 2500 gallons of fuel oil and 1500 gallons of gasoline. The trailer tank had on it a "ground chain," the evidence being that after the fire the chain was not long enough to reach the ground. The trailer tank was moved by a tractor unit which carried three tanks of 30 gallons each for fuel for the tractor.

The combined unit was so placed that delivery could be made of both gasoline and fuel oil at one time. The large vents in the top of the compartments were ordinarily opened to permit air to displace fuel during the delivery. The vents were opened in this delivery. A hose from the fuel oil compartment was connected with the pump and receiving tank, fuel oil being delivered in that manner. A standard hose for gasoline delivery was connected with the gasoline compartment and placed in the intake pipe of the gasoline receiving tank. The hose at its outer end was equipped with a brass end, smaller than the intake opening. A gasket was not used in making the connection at the valve on the compartment. When gasoline was turned into the hose, a leak occurred and the leaking gasoline was caught in a bucket under the hose. Delivery had started and had proceeded from

one and one-half to three minutes when an employee of the Farmers Association stumbled over one of the hose. The hose was crossed in making the delivery. Immediately thereafter fire was discovered at the inlet and outlet pipes of the gasoline tank.

The employees involved were unable to state the cause of the fire. Plaintiff offered an expert witness who testified that if the truck had no ground chain and if the metal end of the hose were placed loosely in the intake opening, there would not be a proper ground of the truck; and that if the connection were made loosely so that the static had not escaped and if something caused a sudden contact, a spark could have been created at that instant that would ignite vaporized gas. The employee of the Farmers Association testified that if the contact between the nozzle of the hose and the intake pipe were severed, there would be a possibility of a spark. He testified, however, that he did not think the stumbling over the hose caused the fire, and that he did not know what caused it.

An unsuccessful effort was made to put out the fire. The employee of the Farmers Association told the defendant's employee to drive the transport unit away. Before doing so, the employee of the Farmers Association closed the valve to the gasoline compartment. He did not succeed in getting the valve to the fuel oil compartment closed because of fire around the valves and in the hose. The fuel oil hose was pulled apart as the transport unit pulled away so that it spread fuel oil which immediately ignited as the unit moved out.

The unit was driven down a roadway a distance fixed at 150 to 275 feet, where the driver abandoned it near some grain elevators and an empty grain storage tank owned in part by plaintiff. At that time the trailer unit was afire, i. e., the vapors coming out of the vents were blazing. Terrific heat and much smoke came from the fire.

Someone turned in a fire alarm; the siren sounded,

and some 20 members of the volunteer fire department responded, including the chief and the plaintiff.

For some 13 years prior to this day, the plaintiff had been engaged in the business of selling gasoline and fuel oil, and operated a garage and repair shop. For seven years prior thereto he had been an employee in the oil industry. He knew of the dangers of oil fires and of explosions when fires of that kind were involved. He had taken training as a volunteer fireman.

The events now to be described occurred in about five minutes after the firemen, including the plaintiff, arrived at the fire. The fire hose was connected and the water turned on under directions of the chief. Five firemen, including the plaintiff, manned the nozzle of a hose, and had moved into a position directly in front of the burning transport and at a distance fixed at 40 to possibly 130 feet from it. From that position they were directing water on the elevator and the grain tank, both of which were afire. The tires on the transport unit deflated from the heat. Some of the witnesses say they exploded with quite a bit of noise; the fire chief said he could hear them—"kind of a spewing out," a "sudden rush of air," "no explosion." The three fuel tanks on the tractor unit exploded. The direction of the explosion of one is not shown. The direction of the explosion of the second is shown. The evidence is that it threw gasoline for some distance to the side of the transport. At least one of these tanks exploded while plaintiff and the others were in front of the transport. After these two explosions had occurred, the fire chief was warned that there was a third tank that had not exploded. He was on his way to order the plaintiff and other firemen to move farther away when that tank exploded, the front end giving way. The tank was so located that the fire hit a fender which caused the flame to shoot up and out in front of the tractor. The flame struck the firemen and the plaintiff. The plaintiff was seriously burned. His injuries need not be set out here.

Witnesses testified that because of the density of the smoke they could not see the fuel oil tanks that exploded. However, sideview pictures taken of the burning transport show that the tractor and its tanks could be seen beneath the dense smoke. Whether these pictures were taken before or after the explosion is not disclosed. An examination of the exploded tanks after the fire disclosed no evidence of vents in the tanks. There is no evidence that proper construction would have required vents in these motor fuel tanks.

It is undisputed in the evidence that plaintiff responded to the fire alarm and attended the fire as a volunteer fireman; when he reached the scene he, as one of the firemen, responded to and obeyed the orders of the chief in the placing of the hose and in fighting the spread of the fire; he became one of five firemen who operated as a unit in the use of department equipment, and when the explosion occurred, he was one of five members actually handling one of the two hose nozzles in operation. It is also in evidence that the chief did not permit just any citizen to be so engaged, but limited the force to members of the department and men who were experienced fire fighters—although we find no evidence that anyone other than members of the department were handling the equipment.

Paintiff in his petition pleaded in detail the alleged negligence of the defendant in the use of defective equipment, in making delivery at the Farmers Association plant, in failing to extinguish the fire, in driving the transport away from the scene and spreading fire, in stopping the truck where it did, in permitting the fire to spread, in failing to provide proper fire protection equipment, in operating the tractor without properly constructed fuel tanks, and in operating the truck without a proper ground. He further pleaded that he attended the fire in the performance of his duties as a fireman and citizen; that he acted to protect his own as well as other property with due care and caution; and that because

of the negligence of defendant he was injured.

The defendant made admissions not important here, denied generally, and alleged that plaintiff was not its agent, servant or invitee; that plaintiff attended the fire in his capacity as a fireman; that the risks and dangers of the fire were patent and assumed by plaintiff; that plaintiff's injuries were caused by his own negligence; and that defendant did not willfully or intentionally injure the plaintiff. By reply plaintiff denied new matter alleged in the answer.

The plaintiff makes a number of assignments of error. The first assignment is that the court erred in sustaining the motion to dismiss. The answer to this assignment is determinative of this appeal.

The rule is that in the absence of any statute or ordinance prescribing a duty on the part of the owner of premises to members of a public fire department, the owner is not liable for injuries to such a fireman except those proximately resulting from willful or wanton negligence or a designed injury. New Omaha Thomson-Houston Electric Light Co. v. Anderson, 73 Neb. 84, 102 N. W. 89. 38 Am. Jur., Negligence, § 125, p. 785; Annotations, 13 A. L. R. 637, 141 A. L. R. 584; 45 C. J., Negligence, § 200, p. 794.

We are not here dealing with a hidden danger or peril. The condition of the burning transport was an obvious one. The danger was a patent one and one which the plaintiff realized as his own testimony discloses. He discounted the danger of explosion from the trailer tanks because the tanks were vented and the vents open. The same danger existed from the smaller tanks about which he had no knowledge as to vents that would cause him to feel secure. One of the tanks exploded while the firemen were in position in front of the transport fighting the fire. They remained there in the face of that warning.

Plaintiff argues that he was there as a citizen in an effort to protect his own property from destruction.

The evidence sustains no such a conclusion. Plaintiff was there in his capacity as a fireman performing a duty he owed the public as a result of his being a fireman. As an incident to that, he was protecting his own property, not as owner, but as a fireman in the performance of a public duty. It likewise is clear from the evidence that no effort was being made, and no effective effort could be made to protect the defendant's property from the destruction of the fire. There was neither willful or wanton negligence here nor a designed injury caused by anything the defendant did or failed to do.

The above rule applies. The judgment of the district court dismissing the cause is affirmed.

AFFIRMED.