**William D. JOHNSON, Plaintiff,**

v.

**Chavis TEAL, Defendant.**

**Civ. A. No. 91–00081–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 11, 1991.

Peter C. Depaolis, Koonz, McKenney & Johnson, P.C., Falls Church, Va., for William D. Johnson.

William J. Virgulak Jr., Doherty, Sheridan & Grimaldi, Fairfax, Va., for Chavis Teal.

Charles J. O'Hara, Robertson, Notarius, McNeil, Arlington, Va., for Travelers Ins. Co.

## MEMORANDUM OPINION

ELLIS, District Judge.

This diversity motor vehicle accident case raises the issue, unresolved in Virginia, whether the "fireman's rule" operates to bar recovery by a policeman when he is injured by the negligence of a person unrelated to risk to which he was responding. Plaintiff, a police officer, alleges he was injured when defendant's negligently operated vehicle caused him to lose control of his motorcycle. Plaintiff, at the time, was responding to a robbery alarm. His siren and emergency lights were on, but apparently went unheeded. Defendant was neither related to, nor the cause of, the robbery to which plaintiff was responding. Although the Supreme Court of Virginia has adopted the fireman's rule, it has never been called upon to decide whether the rule applies in circumstances such as those at bar.

This matter came before the Court on defendant's Motion for Judgment on the Pleadings, or in the alternative for Summary Judgment. Because the material facts were undisputed, this matter was ripe for summary disposition on the legal issue presented. For the reasons stated from the bench and elaborated here, the Court concluded that the fireman's rule in Virginia shields from liability only those negligent acts which create the need for a fire fighter or police officer; it does not shield the negligent acts of third parties unrelated to the risk that required the officer's presence. Accordingly, defendant's motion was denied from the bench.

### Facts

The pertinent facts may be simply stated. Plaintiff worked as a police officer for the Metropolitan Washington Airport Authority at Washington National Airport in Arlington, Virginia. On February 15, 1989, he received notice of an emergency holdup alarm. In response, plaintiff drove his motorcycle north on Thomas Avenue in Arlington at approximately fifteen miles per hour with full emergency gear activated. The complaint alleges that defendant was driving south on Thomas Avenue towards the intersection at Abingdon Access Road, at which southbound vehicles are required to yield the right-of-way to northbound vehicles. Plaintiff alleges that defendant negligently failed to yield the right-of-way, or to heed plaintiff's siren and emergency lights. Plaintiff further claims that defendant's negligence forced him to take evasive action and to lose control of his motorcycle. As a result, plaintiff was pinned beneath his motorcycle and suffered extensive and serious injuries.

### Analysis

The fireman's rule is a common law principle holding that an injured fireman may not recover against a defendant who negligently started the fire or created the risk requiring the fire fighter's presence. Firemen, in this event, are held, as a matter of law, to have assumed the risk. The rule arose as a judicial response to the question of the standard of care property owners and occupiers owed to fire fighters who came onto their land or property in the course of performing their duties. *See Pottebaum v. Hinds*, 347 N.W.2d 642, 644 (Iowa 1984); W. Prosser and W. Keeton, The Law of Torts 429–430 (5th ed. 1984) (hereafter "The Law of Torts"). A fire fighter did not fit into the common law categories of invitee, licensee, and trespasser. "They clearly are not trespassers. Nor can they be classified as licensees or invitees, who enter with consent or invitation of the occupant, as consent and invitation are irrelevant to a policeman's or a fireman's privileged entry." *Pearson v. Canada Contracting Co., Inc.*, 232 Va. 177, 349 S.E.2d 106, 110 (1986). Most courts have either classified fire fighters as licensees or have ascribed to them the same rights as enjoyed by licensees. Thus, these courts have held that an owner may be held liable for injuring fire fighters "intentionally or by willful and wanton misconduct, and he must exercise reasonable care for their protection in carrying on his activities, and give warning of hidden dangers of which he knows." The Law of Torts at 429–430.

■ More recently, courts have extended the fireman's rule to cover all acts of negligence which create the need for fire fighters. These courts have followed the lead of the Supreme Court of New Jersey, which reasoned, "[p]robably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences." *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 131 (1960); *see also* Annotation, *Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of his Duty*, 11 ALR 4th 597, 607–612 (1982). Thus the *Krauth* court held that fire fighters assume the risk of fire hazards, and no duty is "owed the fireman to exercise care so as not to require the special services for which he is trained and paid." *Krauth*, 157 A.2d at 131. In economic terms, then, courts implementing the rule have decided that the costs of fire fighters' injuries should be borne by society as a whole and not by the individuals whose negligent acts created the risk. In a sense, fire fighters assume the risk in return for society's assurance that they will be compensated for their injuries through their pay and the appropriate worker compensation schemes. In the words of the Supreme Court of Virginia, "it has not been the policy of the law of Virginia to facilitate litigation by such public officers as a means of compensating them for injuries received in the line of duty, but rather to impose that burden on the public generally, through workers' compensation and other benefits." *Commonwealth v. Millsaps*, 232 Va. 502, 352 S.E.2d 311, 315 (1987).[1] And finally, courts in Virginia[2] and elsewhere[3] have generally held that the rule covers police officers as well as fire fighters.

■ The question presented here does not involve the typical focus of the fireman's rule, namely the negligently created risk that furnished the occasion for the fire fighter's or police officer's presence. Rather, the question here concerns whether the rule should be extended to risks independent of the risk that occasioned the officer's presence. Virginia has not yet squarely addressed this question.[4] The Court must therefore divine what the Supreme Court of Virginia would decide if faced with this question. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J. concurring). This divination process requires (i) canvassing authorities beyond Virginia, (ii) looking for clues in Virginia Supreme Court decisions applying the rule in other contexts, and (iii) analyzing whether the rule's underlying policies suggest an an-

1. *See also Chesapeake and Ohio Railway Company v. Crouch*, 159 S.E.2d 650, 654 (1968) (the fireman's rule "does not depend on the existence of a spirit of venturesomeness in the face of a known danger ... but rather upon the relationship between the fireman and the public, from which arises his obligation to accept the usual risks of injury in undertaking to suppress fires without regard to whether or not they are caused by negligence."), *cert. denied*, 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968).

2. *Pearson*, 349 S.E.2d at 110; *Millsaps*, 352 S.E.2d at 315.

3. *See, e.g. Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983); *Steelman v. Lind*, 97 Nev. 425, 634 P.2d 666 (1981); *Hannah v. Jensen*, 298 N.W.2d 52 (Minn.1980); *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977); *Garcia v. City of South Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App.1982); *Whitten v. Miami–Dade & Sewer Authority*, 357 So.2d 430 (Fla.App.1978).

4. Virginia law applies because this matter was transferred to this district from the District of the District of Columbia pursuant to 28 U.S.C. 1404(a) and because the District of Columbia conflict rules would require the application of Virginia law to the facts at bar. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (law of transferor forum governs case transferred under § 1404(a)); *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (same); *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman*, 491 A.2d 502 (D.C.1985) (District of Columbia conflicts rules use "governmental interests" analysis to determine applicable law in tort cases).

swer. These sources point persuasively to the conclusion that the rule should not be extended to shield negligent acts that are separate and independent from the act that occasions the officer's presence.

Most courts consider that the fireman's rule is of limited scope; they view the rule as barring recovery for the negligent act which caused public officers to be present in their official capacity, but permitting recovery for any unrelated acts of negligence. In the words of one court, "negligently-created risks that did not create the occasion for the firefighter's presence will give rise to a cause of action against the homeowner." *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663, 666 (1983).[5]

Commentators, too, recognize that the rule has been "held only to apply when the firefighter or police officer is injured from the very danger, created by the defendant's act of negligence, that required his professional assistance and presence at the scene in the first place, and the rule will not shield a defendant from liability for independent acts of misconduct which otherwise cause the injury." The Law of Torts at 431; *see also* Annotation, 11 ALR 4th at 612–616; Note, *The Fireman's Rule: Defining Its Scope Using the Cost–Spreading Rationale,* 71 Calif.L.Rev. 218, 222 (1983).

Virginia authority, while not explicit on the issue at bar, still points persuasively to the same result. Analysis of the Virginia cases appropriately begins with *Chesapeake & Ohio Ry. Co. v. Crouch,* 208 Va. 602, 159 S.E.2d 650 (1968), *cert. denied,* 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968), the first case squarely adopting the rule.[6] There, the Supreme Court of Virginia applied the rule to bar a fireman's estate from recovering against a railroad for fatal injuries incurred while fighting a blaze negligently caused by the railroad. In reaching this conclusion, the *Crouch* court, in terms especially pertinent here, emphasized the rule's reliance on the assumption of risk doctrine. And significantly, the court made clear that fire fighters

---

**5.** *See also Mahoney v. Carus Chemical Co.,* 102 N.J. 564, 510 A.2d 4 (1986) ("Case law draws a distinction between injury stemming from the negligence that brought the firefighters or police to the scene in the first place and injury suffered from independent causes...."); *Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 644 P.2d 822, 826 (1982) ("[A] police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain an action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking.... [I]n California, the fireman's rule has never been construed as shielding a defendant from liability for acts of misconduct which are independent from those which necessitated the summoning of the fireman.") (quoting *Walters v. Sloan,* 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977)); *Cella v. Interstate Properties,* 556 A.2d 1262 (N.J.Super.1989) (fireman's rule does not apply to independent or intervening acts of negligence that injure officer); *Sutton v. Shufelberger,* 31 Wash.App. 579, 643 P.2d 920, 926 (1982) ("The rule does not apply to a third party whose intervening negligence injures the official while he is in the performance of his duty. The rule has not been applied to forgive negligent or intentional injury to the official by an intervenor."); *Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117, 1120–21 (1981) ("The pertinent inquiry is whether or not the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene

in his professional capacity.... Since [plaintiff's] injuries were caused by the independent negligence of a third person, the fireman's rule is inapplicable."); *cf. Herman v. Welland Chemical, Ltd.,* 580 F.Supp. 823 (M.D.Pa.1984) (under Pennsylvania law, rule did not apply to volunteer firemen struck by car while directing traffic at the site of a chemical spill; "It is what a fireman is doing at the time he is hurt that matters, not the mere fact that he is a fireman.") (quoting *Ruhle v. Philadelphia,* 346 Pa. 214, 29 A.2d 784 (1943)); *Gillespie v. Washington,* 395 A.2d 18 (D.C.1978) (test for determining a professional rescuer's right to recover is "whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity."); *Maltman v. Sauer,* 84 Wash.2d 975, 530 P.2d 254 (1975) (same).

**6.** *Berry v. Hamman,* 203 Va. 596, 125 S.E.2d 851 (1962), a precursor of *Crouch,* was a suit by a police officer shot and wounded by a fellow officer. The Supreme Court reversed a jury verdict, holding that the shooting was purely an accident and not the result of negligence. There was thus no occasion for application of the rule. But in *dicta* that suggests or presages the application of the rule, the court noted that the plaintiff officer willingly exposed himself to a known danger and that one typically cannot recover if injured from a risk deliberately assumed. *See id.* 125 S.E.2d at 854.

do not assume any and all risks; rather, the rule operates to bar liability only for the "usual risks of injury in undertaking to suppress fires," *id.* 159 S.E.2d at 654, and not "risks beyond those inevitably involved in firefighting." *Id.* at 653. In other words, *Crouch* clearly limited the rule to risks inherent in fire fighting. Consistent with this, none of the authorities cited in *Crouch* hold that the rule shields the negligent acts of parties unrelated to the reason for the officer's presence.[7]

Cases following *Crouch* suggest that the Supreme Court of Virginia continues to restrict the rule to acts of negligence that inhere in firefighting or police work and require the presence of a fire fighter or police officer at the scene of the injury. For example, in *Pearson* the court considered two appeals, the first involving a fireman who fell through a hole in the floor of a building undergoing demolition, and the second involving a policeman who was injured when the platform on which he was standing collapsed. Both officers had entered the premises in performance of their official duties. The court suggested that the case presented a question of injuries resulting from "risks beyond those inherently involved in firefighting or police work". *See* 349 S.E.2d at 110. Neither act of alleged negligence—failing to repair or obscuring a hole in the floor or failing to repair the rotten wood in a platform—had anything to do with the reason for summoning the fire fighter or police officer to the site; neither act was forseeable by the officers, and neither act created a hazard or risk that is inherent in or peculiar to fire fighting or police work. *See id.* at 111 and n. 6 (describing rules of liability governing dangerous conditions presenting "an unreasonable risk of harm"); *see also Philip Morris, Inc. v. Emerson*, 235 Va. 380, 368 S.E.2d 268, 281 (1988) (fireman's rule inap-

plicable where peril to rescue squad members from supertoxic chemical was unforseeable and highly unusual as compared to their normal duties).

The facts in *Millsaps* provide an illuminating contrast. There, the negligent conduct that caused the damage at issue—a motorist driving at wildly excessive speed in an attempt to evade police pursuit—was precisely the reason for the police officer's presence. In addition, the officer knew that Millsaps' vehicle was racing toward him at high speed and was well aware of the hazards involved in attempting to execute a "rolling roadblock." Indeed, the hazards of a "rolling roadblock" are inherent in police work; they are hazards police officers are trained to confront, and thus, as the court noted, the risk of injury or damage involved in performing this maneuver can be said to have been assumed by the officer. *See* 352 S.E.2d at 315–16 (suggesting that on the record presented the trial court might well have found that the police officer assumed the risk of accident under the fireman's rule).

*Millsaps* provides an additional clue in support of the result reached here. There the Supreme Court made clear that the fireman's rule is based in part on a policy of replacing litigation resulting from injuries incurred in the performance of ordinary duties with public compensation, including workers' compensation. *See* 352 S.E.2d at 315. In other words, fire fighters and police officers are asked to assume certain risks, and in return they are provided an exclusive compensatory remedy for injuries resulting from those risks. In the same way, Virginia's Workers' Compensation Act, Va.Code § 65.1–40, is designed to substitute a compensatory remedy for litigation over typical workplace injuries. But in the Virginia workers' compensation scheme, it is well established that an in-

---

**7.** *See Bartels v. Continental Oil Company*, 384 S.W.2d 667 (Mo.1964); *Buren v. Midwest Industries, Inc.*, 380 S.W.2d 96 (Ky.1964); *Jackson v. Velveray Corp*, 82 N.J.Super. 469, 198 A.2d 115 (1964); *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129 (N.J.1960); *Shypulski v. Waldorf Paper Products Co.*, 232 Minn. 394, 45 N.W.2d 549 (1951); *Fentress v. Co-operative Refinery Ass'n*, 149 Neb. 355, 31 N.W.2d 225 (1948); *Campbell v. Pure Oil Co.*, 15 N.J.Misc. 723, 194 A. 873 (1937); *Suttie v. Sun Oil Co.*, 15 Pa.Dist. & Co.R. 3 (Cty.Ct.1930); *Buckeye Cotton Oil Co. v. Campagna*, 146 Tenn. 389, 242 S.W. 646 (1922); *Clark v. Boston & M.R.R.*, 78 N.H. 428, 101 A. 795 (1917); *Houston Belt & Terminal Ry. Co. v. O'Leary*, 136 S.W. 601 (Tex.Civ.App.1911); *Lunt v. Post Printing & Publishing Co.*, 48 Colo. 316, 110 P. 203 (1910).

jured employee is not barred from bringing an action against "a stranger to the trade, occupation or business in which the plaintiff was involved." *Whalen v. Dean Steel Erection Co. Inc.*, 229 Va. 164, 327 S.E.2d 102, 105 (1985), *appeal dismissed*, 474 U.S. 802, 106 S.Ct. 33, 88 L.Ed.2d 26 (1985); *see also Stout v. Onorati*, 221 Va. 143, 267 S.E.2d 154 (1980); *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966); *Rea, Administratrix v. Ford*, 198 Va. 712, 96 S.E.2d 92 (1957); *Sykes v. Stone & Webster Eng. Corp.*, 186 Va. 116, 41 S.E.2d 469 (1949); *Fetig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946). A similar principle operating in the context of the fireman's rule leads to the result reached here, namely that one who negligently creates the need for a public officer is analogous to an employer, and therefore is not held liable for negligence, while a negligent third party who does not create the need for a public officer is, in effect, a stranger to the work, and may be held liable.

This conclusion is also consistent with the rule's underlying rationale. In essence, the rule owes its existence to the notion that it would be unfair to impose liability upon a property owner who is helpless to prevent injury to a fireman who has rushed to the premises to suppress a fire. *See Crouch*, 159 S.E.2d at 655 ("To impose upon an owner liability for such negligence [in originating a fire on his property] ... would inflict an onerous and unfair risk upon one who is deprived of all control over the [fireman's] acts, ... who, for the public good, has temporarily lost all control over his property, and is helpless to protect himself.") (quoting *Wax v. Co-operative Refinery Ass'n*, 154 Neb. 805, 49 N.W.2d 707, 710 (1951)).[8] This rationale simply has no relevance where, as here, the tortfeasor is neither a property owner nor unable to prevent injury to a public officer. Put differently, the rule is based on the obligation of public officers to assume the usual risks of fire suppression or police

work. *See id.*, 159 S.E.2d at 654. It has no application where, as here, the cause of injury is an independent act of negligence unrelated to the fire or criminal conduct to which the officer is responding. In such circumstances, the normal policies of tort law—that tortfeasors should compensate the victims of their negligence—should govern. No sensible policy reason supports shielding from liability those tortfeasors whose negligent acts are not inherent hazards of fire fighting or police work.

Defendant cites two Virginia trial court cases for the proposition that the fireman's rule would apply to the facts at bar. *Boyce v. Cooper*, At Law No. 22250 (Circuit Court for the City of Hampton, Order dated March 23, 1989); *Newcomb v. Wright*, At Law No. 23513–M (Circuit Court for the City of Chesapeake, Order dated January 28, 1991). Neither is persuasive. *Boyce* merely asserts in conclusory fashion that a state trooper "assumed the risk of injuries occasioned by ordinary negligence inherently involved in the normal pursuit of his duties." No reasoning is supplied. Nor does the court's order provide facts from which it may be determined whether the defendant was related to or independent from the criminal activity to which the trooper was responding. Similarly, *Newcomb*, while presenting facts analytically indistinguishable from the instant case, simply restates the rule without any analysis of why the defendant's conduct constituted "negligence inherently involved in the normal pursuit" of the police officer's duties. In any event, this Court is not bound by these decisions.

Defendant further argues that the rule should apply for reasons of equity because, had the parties roles been reversed, defendant would be able to recover against plaintiff only on a showing of gross negligence, citing *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991). In defendant's view, *Colby* invites such an "equitable trade-off." This claim is also unpersuasive. To begin

---

**8.** *See also* The Law of Torts at 431–32:

> Perhaps the most legimate basis for the distinction lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in looking after the premises, and in preparation for the visit, cannot reasonably be looked for.

with, nothing in the Virginia cases supports defendant's claim that the fireman's rule is avoided in cases of so-called gross negligence. Nor is there any reason in principle why this should occur. While an established exception to the rule does exist when the defendant's conduct is found to be wilful and wanton, see *Millsaps*, 352 S.E.2d at 315, as explained above the rule simply does not apply, regardless of the degree of negligence, where the defendant creates "an undue risk, not inherently involved in the normal pursuit of [the officer's] duties." *Id.* The concept of "undue risk" does not refer to the level or degree of negligence, but rather to the nature of the risk. If the risk is inherent in the officer's duties, it is assumed by the officer and the rule applies. *Colby* is thus inapposite. It holds only that (i) on the particular facts presented a police officer who injured another motorist while engaged in vehicular pursuit was entitled to sovereign immunity, and (ii) where sovereign immunity applies, a plaintiff must establish gross negligence in order to prevail. *See* 400 S.E.2d at 187. *Colby* has nothing to do with the fireman's rule. Accordingly, the Court declines defendant's invitation to create an "equitable trade-off" that has not been recognized by either the legislature or courts of Virginia.

### Conclusion

The convincing weight of authority, both within and beyond Virginia, and the policies underlying the fireman's rule compel the conclusion that the Supreme Court of Virginia would not apply the rule where, as here, a police officer is injured by an independent act of third-party negligence. Defendant's Motion for Judgment on the Pleadings, Or, in the Alternative, for Summary Judgment has accordingly been denied. An appropriate order has issued.